UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRIET GATCHALIAN,<br><br>   Plaintiff,<br><br>   v.<br><br>ATLANTIC RECOVERY SOLUTIONS, LLC, et al.,<br><br>   Defendants. | Case No. 22-cv-04108-JSC<br><br>**ORDER RE: MOTION TO REMAND**<br><br>Re: Dkt. No. 11 |

Plaintiff filed this fair debt collection practices lawsuit in Santa Clara County Superior Court. (Dkt. No. 1-1.)[1] Defendants removed to federal court and Plaintiff filed the now pending motion to remand. (Dkt. No. 11; *see* Dkt. No. 1.) Having carefully considered the parties' briefing, the Court concludes that oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the August 31, 2022 hearing, and DENIES the motion. The allegations of Plaintiff's complaint establish standing to pursue her claims in federal court.

**COMPLAINT ALLEGATIONS**

In an effort to collect an alleged debt, Defendants' agents sent a total of 15 text messages and voicemails to Plaintiff between June and October 2021. (Dkt. No. 1-1 ¶¶ 22–37.) Defendants' routine practice in such text messages and voicemails is not to disclose the nature of their business, not to disclose that they are attempting to collect a debt, to instill a false sense of urgency, and to falsely imply that a lawsuit will be filed or has been filed to collect the debt. (*Id.* ¶¶ 40–44.)

Plaintiff "seeks statutory damages against Defendants arising from their routine practice of

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

sending voicemail and cellular telephone text messages . . . which fail to meaningfully disclose: 1) Defendants' identity, 2) the nature of Defendants' business, and 3) that each message was a communication from a debt collector in an attempt to collect a debt." (*Id.* ¶ 5; *see id.* ¶¶ 68, 81.) Defendants' "voicemail and text messages . . . violate" the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA") and the federal Fair Debt Collection Practices Act ("FDCPA")—specifically "California Civil Code §§ 1788.11(b), 1788.11(c), 1788.13(j), 1788.17, and 15 U.S.C. §§ 1692c(a)(1), 1692d(6), 1692e(2)(A), 1692e, 1692e(5), 1692e(10), and 1692e(11)." (*Id.* ¶ 5.) Plaintiff brings claims on behalf of two putative classes, one of people "to whom [Defendants] sent voicemail messages" and one of people "to whom [Defendants] sent cellular telephone text messages." (*Id.* ¶¶ 45–47.)

**DISCUSSION**

Plaintiff moves to remand for lack of federal subject matter jurisdiction, arguing that the complaint does not establish Article III standing. "Standing is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "[The] plaintiff must show (i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). These elements are often referred to as injury in fact, causation, and redressability. *See, e.g.*, *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020).

As the parties invoking federal jurisdiction by removal, Defendants have the burden to show that the facts that existed at the time the complaint was filed give rise to Article III standing.[2] *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019); *see Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiff specifically argues that the concrete injury in fact requirement is not

---

[2] The complaint's attempt to disclaim federal Article III standing, (Dkt. No. 1-1 ¶ 10), has no legal significance; the issue is whether the complaint allegations, or other facts existing when the complaint was filed, establish standing.

1 met; the Court is satisfied, and the parties do not dispute, that the other requirements of Article III standing are met. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116 n.7 (9th Cir. 2020) ("Once we conclude that this was a concrete injury, it is clear that it was also particularized, fairly traceable to Facebook, and likely to be redressed by a favorable judicial decision."). The Court's analysis focuses on the FDCPA claim, because without that federal question there would be no basis for federal subject matter jurisdiction. (*See* Dkt. No. 1 ¶¶ 5–8 (asserting federal subject matter jurisdiction on the basis of the FDCPA federal question).)

### A.   Concrete Injury in Fact

A concrete injury in fact may be financial or nonfinancial, tangible or intangible, but it must be "real, and not abstract"; "it must actually exist." *TransUnion*, 141 S. Ct. at 2204; *Spokeo*, 136 S. Ct. at 1548.

> The most obvious are traditional tangible harms, such as physical harms and monetary harms. . . . Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion.

*TransUnion*, 141 S. Ct. at 2204 (cleaned up; citing, in part, *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020)). Additionally, although Congress "may not simply enact an injury into existence," it may "elevate harms that exist in the real world." *Id.* at 2205 (cleaned up). Thus, "Congress's views may be instructive" in "determining whether a harm is sufficiently concrete to qualify as an injury in fact." *Id.* at 2204 (cleaned up).

Plaintiff's complaint asserts she was harmed by receiving unwanted and misleading voicemails and text messages. The voicemails and text messages are the conduct giving rise to her claims, as well as the injuries delineating the two putative classes she represents. The harm of receiving unwanted and misleading voicemails and text messages is a concrete injury in fact with a close relationship to the harm of intrusion upon seclusion, traditionally recognized as providing a basis for lawsuits in American courts. *See Gadelhak*, 950 F.3d at 462 ("The common law has long recognized actions at law against defendants who invaded the private solitude of another by committing the tort of intrusion upon seclusion. . . . Courts have [] recognized liability . . . for

irritating intrusions—such as when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff. The harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy." (cleaned up)); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (noting that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," and finding concrete injury in fact).

Additionally, the harm of receiving unwanted and misleading voicemails and text messages relates to the substantive rights codified by Congress in the FDCPA. Plaintiff alleges violations of the FDCPA provisions prohibiting debt collectors from: "communicat[ing] with a consumer in connection with the collection of any debt at any unusual time or place"; "engag[ing] in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"; and "us[ing] false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §§ 1692c(a)(1), 1692d(6), 1692e. These are substantive provisions that fulfill the statute's purpose "to eliminate abusive debt collection practices by debt collectors." *Id.* § 1692(e); *see Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("[The] provision at issue . . . does not describe a procedure that video service providers must follow. Rather, it protects generally a consumer's substantive privacy interest in his or her video-viewing history."). Thus, Congress's views instruct that a consumer's right to be free from unwanted and misleading messages is a substantive right under the FDCPA and reinforce the conclusion that violation of that right is a concrete harm. *See TransUnion*, 141 S. Ct. at 2204.

Plaintiff contends that the complaint alleges no more than a "bare procedural violation" of the FDCPA. *Spokeo*, 136 S. Ct. at 1550. In *Spokeo*, the Supreme Court explained:

> A violation of one of the [Fair Credit Reporting Act's] procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm . . . . An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

4

*Id.*; *see TransUnion*, 141 S. Ct. at 2209 (finding "the mere existence of inaccurate information in a database" was not a concrete injury in fact). As explained above, the alleged harm relates to substantive provisions of the FDCPA, not mere procedural requirements. The allegation that Plaintiff received unwanted and misleading messages is different in kind from, for example, an allegation that messages were sent to her but never received, or that she received messages but was not misled by them. *Cf. TransUnion*, 141 S. Ct. at 2213–14 (finding incorrect formatting of mailings was not a concrete injury in fact, and noting, "there is no evidence that a single other class member so much as opened the dual mailings, nor that they were confused, distressed, or relied on the information in any way" (cleaned up)). Plaintiff's alleged harm is sufficiently concrete.

Plaintiff cites two cases concluding that the plaintiffs lacked Article III standing, but both are distinguishable. In *Davis v. CACH, LLC*, No. 14-cv-03892-BLF, 2021 WL 1626484, at *1 (N.D. Cal. Apr. 6, 2021), the plaintiff alleged that debt collectors sent her a declaration under penalty of perjury that did not meet the requirements of California Code of Civil Procedure § 98 because the declarant was not physically located within 150 miles of the place of trial. She alleged that use of the invalid declaration was a violation of the FDCPA. The court found no concrete injury in fact from the "mere violation of a state civil procedure statute," uncoupled from "the type of abusive debt collection practice the FDCPA was designed to prevent." *Id.* at *3. In *Williams v. Nichols Demos, Inc.*, No. 5:17-cv-07101-EJD, 2018 WL 3046507, at *1 (N.D. Cal. June 20, 2018), the plaintiff alleged that when she applied to work for the defendants, they gave her a background check disclosure and authorization form that "contained extraneous and superfluous language . . . not consist[ing] solely of the disclosure as required by federal and state laws." She brought claims under the Fair Credit Reporting Act, among other statutes. The court found no concrete injury in fact from the "bare procedural violation," noting that the plaintiff did not allege she was confused by the disclosure, that she would not have signed it had it contained less superfluous language, that she was denied employment after her background check, or that the background check produced an inaccurate report. *Id.* at *5 (cleaned up).

Unlike the procedural violations in *Davis* and *Williams*, Plaintiff alleges she was harmed

5

by receiving messages that were unwanted and misleading. That is the substantive harm that the FDCPA is meant to redress, and it is analogous to the harm of intrusion upon seclusion traditionally recognized American courts.

* * *

Accordingly, the complaint alleges a concrete injury in fact sufficient to support Article III standing. Federal subject matter jurisdiction exists over this removed case.

## CONCLUSION

Plaintiff's motion to remand is DENIED.

This Order disposes of Docket No. 11.

**IT IS SO ORDERED.**

Dated: August 30, 2022

_____
JACQUELINE SCOTT CORLEY
United States District Judge