Fred W. Schwinn (SBN 225575)
Raeon R. Roulston (SBN 255622)
Matthew C. Salmonsen (SBN 302854)
CONSUMER LAW CENTER, INC.
38 West Santa Clara Street
San Jose, California  95113-1806
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

Attorneys for Plaintiff
HARRIET GATCHALIAN

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| HARRIET GATCHALIAN, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>ATLANTIC RECOVERY SOLUTIONS, LLC, a New York limited liability company; ZACHARIAH YAHIA AGA, individually and in his official capacity; DNF ASSOCIATES, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 3:22-cv-04108-JSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION**<br><br>**[Fed. R. Civ. P. 23]**<br><br>Hearing Date:     September 28, 2023<br>Hearing Time:     10:00 a.m.<br>Hearing Judge:    Jacqueline Scott Corley<br>Hearing Courtroom: 8, 19th floor<br>Hearing Location:   450 Golden Gate Avenue<br>                       San Francisco, California |

Plaintiff, HARRIET GATCHALIAN, on behalf of herself and Defendants, ATLANTIC RECOVERY SOLUTIONS, LLC; ZACHARIAH YAHIA AGA; and DNF ASSOCIATES, LLC (collectively "the parties") hereby submits this Motion for preliminary approval of a proposed settlement of this action. The terms of the parties' settlement are set forth in the Class Action Settlement Agreement filed as Exhibit "A" to the Declaration of Fred W. Schwinn submitted with this memorandum.

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................................1

II.  BACKGROUND..................................................................................................................2

III. SETTLEMENT TERMS.......................................................................................................3

    A.  Proposed Settlement Class.............................................................................................2

    B.  Payments to Class Members, Plaintiff, and Counsel.....................................................4

    C.  Release by Class Members.............................................................................................5

    D.  Notice and Settlement Administration...........................................................................6

    E.  Opt-Out and Objection Process.....................................................................................6

    F.  Payment of Administrative Costs...................................................................................7

IV.  ARGUMENT.......................................................................................................................7

    A.  Certification of the Settlement Class.............................................................................7

        1. Rule 23(a) Requirements.........................................................................................7

            a.  Numerosity.........................................................................................................7

            b. Commonality.......................................................................................................8

            c.  Typicality............................................................................................................8

            d.  Adequacy of Representation................................................................................9

        2.  Rule 23(b)(3) Requirements..................................................................................10

            a. Predominance.....................................................................................................10

            b.  Superiority.........................................................................................................11

    B.  The Settlement is Fair, Adequate, and Reasonable.....................................................12

        1. The Strength of Plaintiff's Case; The Risk, Expense, Complexity, and
        Likely Duration of Further Litigation; and the Risk of Maintaining Class
        Action Status Throughout the Trial.......................................................................13

2. The Amount Offered in the Settlement..........................................................14

3. The Extent of Discovery and the Stage of the Proceedings.........................16

4. Experience of Class Counsel.......................................................................16

C. The Proposed Method of Class Notice is Appropriate...........................................17

D. Final Approval Hearing........................................................................................18

V. CONCLUSION........................................................................................................18

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 3:22-cv-04108-JSC

# TABLE OF AUTHORITIES

*Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005)...............................................8-11, 15

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008)....................................................................13

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).........................................................10-11, 16

*Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345 (E.D.N.Y. 2006)...........................................................15

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004)..................................................................12

*Cope v. Duggans*, 203 F.Supp.2d 650 (E.D. La. 2002)..................................................................15-16

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)...............................................................................14

*del Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585 (N.D. Cal. 2008)......................15

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010)..........................................................10

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980)........................................................17

*Gonzales v. Arrow Financial Services*, 660 F.3d 1055 (9th Cir. 2011)...................................................15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)......................................................8-9, 12-13, 17

*Hicks v. Client Servs., Inc.*, 257 F.R.D. 699 (S.D. Fla. 2009).............................................................15

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016)................................................5

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008).................................................17

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078 (N.D. Cal. 2007)...............................................13

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607 (S.D. Cal. 2008)..........................................16

*Jancik v. Cavalry Portfolio Servs., LLC,*
2007 U.S. Dist. LEXIS 49500 (D.Minn. July 3, 2007)........................................................................15

*Jerman v. Carlisle,*  271 F.R.D. 572 (N.D. Ohio 2010).....................................................................15

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978)....................................................9

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)...............................................6, 13, 15

*Little-King v. Hayt Hayt & Landau*, 2013 U.S. Dist. LEXIS 129587 (D. N.J. Sep. 10, 2013).................15

---

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 3:22-cv-04108-JSC

*Lusby v. Gamestop Inc.*, 297 F.R.D. 400 (N.D. Cal. 2013)..................................................................13

*Malta v. Fed. Home Loan Mortg. Corp.*,
2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 4, 2013)........................................................................8

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977)........................................................18

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...............................................17

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).........................................14

*Prof'l Collection Consultants v. Lujan*, 23 Cal.App.5th 685 (Cal. App. 1st Dist. 2018)..................15

*Rannis v. Recchia*, 380 Fed. Appx. 646 (9th Cir. 2010).....................................................................7

*Rhodes v. Olson Assocs., P.C.*, 83 F.Supp.3d 1096 (D. Colo. 2015).................................................15

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)..................................................................................17

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).......................................................................7, 12

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993)....................................................18

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)......................................................11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)......................................................................10

## **STATUTES**

15 U.S.C. § 1692k(a)(2).................................................................................................................4-5, 14

Cal. Civil Code § 1788.17...................................................................................................................4-5

## **RULES**

Fed. R. Civ. P. 23(a)..............................................................................................................................7

Fed. R. Civ. P. 23(a)(1).........................................................................................................................7

Fed. R. Civ. P. 23(a)(2).........................................................................................................................8

Fed. R. Civ. P. 23(a)(3).......................................................................................................................8-9

Fed. R. Civ. P. 23(a)(4).........................................................................................................................9

Fed. R. Civ. P. 23(b)(3)........................................................................................................10-11, 17

Fed. R. Civ. P. 23(c)(2)(B)........................................................................................................17-18

Fed. R. Civ. P. 23(e)........................................................................................................7, 17

<u>**MISCELLANEOUS**</u>

4 Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002 and Supp. 2004)..................................12

Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004)......................................................12

# I. INTRODUCTION

This is a consumer class action brought pursuant to the California Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.33 ("RFDCPA"), and the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"), both of which prohibit debt collectors from engaging in abusive, deceptive and unfair practices. The parties herein have agreed to settle this matter on the following terms:

- Defendants will pay a class fund of $51,975.00 as a *pro rata* distribution to the Class Members. Specifically, Defendants will pay no less than $175.00 to each member of the Class;

- Defendants will pay Plaintiff $2,000 in statutory damages;

- The amount of any settlement checks uncashed after 90 days after mailing will be paid to the Katharine & George Alexander Community Law Center in San Jose, California, as a *cy pres* recipient;

- Defendants will pay Plaintiff $2,000 as a service award for her services to the Class, as authorized by the Court;

- Defendants will cease collecting from Plaintiff the debt originally owed to Sallie Mae Bank;

- Defendants will pay attorneys' fees and costs to Class Counsel pursuant to the FDCPA and RFDCPA, separate and apart from the Class's recovery (*i.e.*, this is not a "common fund recovery" case). The amount of attorneys' fees and costs is to agreed by the parties or to be decided by the Court upon noticed motion if the parties cannot agree; and

- Defendants will pay for all costs associated with Class Notice and class administration, again separate and apart from the Class's recovery.

Moreover, the settlement requires an ample notice program consisting of direct mail notice to each member of the proposed Class, and no claims process. Defendants have in their possession the

---

MEMORANDUM OF POINTS AND AUTHORITIES                Case No. 3:22-cv-04108-JSC

names and recent addresses of each putative Class Member. The settlement administrator will take all reasonable steps necessary to ensure that each Class Member receives direct mail notice.

## II. BACKGROUND

On June 6, 2022, Plaintiff filed a <u>Class Action Complaint for Statutory Damages</u> ("Complaint") in the Superior Court of California, County of Santa Clara, as case number 22CV398921,[1] alleging that Defendants violated various provisions of the FDCPA and RFDCPA. Specifically, Plaintiff alleged that Defendants sent voicemail and/or cellular telephone text messages to Plaintiff and the Class in an attempt to collected defaulted consumer debts, which: 1) failed to meaningfully disclose Defendants' identity and the nature of Defendants' business; 2) failed to disclose that the message was a communication from a debt collector in an attempt to collect a debt; 3) attempted to instill a false sense of urgency in the consumer; and 4) falsely represented or implied that a civil lawsuit would be filed, or had been filed, to collect a defaulted consumer debt, when no such civil lawsuit was intended to be filed or had in fact been filed. By these actions, Plaintiff alleges that Defendants necessarily made and used false, deceptive, and misleading representations in an attempt to collect defaulted consumer debts, and misrepresented the character or legal status of the alleged debts. Plaintiff further alleged that Defendants sent cellular telephone text messages to consumers, in an attempt to collect defaulted debts before 8:00 a.m. local time at the consumer's location.

On July 13, 2022, DNF filed a Notice of Removal to the United States District Court for the Northern District of California. (Docket 1). On July 19, 2022, DNF filed its Answer to Plaintiff's <u>Complaint</u>. (Doc. 9). That same day Plaintiff filed a Motion to Remand, (Doc. 11), to which DNF filed an Opposition. (Doc. 15). Thereafter on August 30, 2022, the Court entered its Order denying Plaintiff's Motion to Remand. (Doc. 16). That same day, Defendant, ZACHARIAH YAHIA AGA filed a Motion to Dismiss on the basis of lack of personal jurisdiction, (Doc. 17), and Defendant,

---

[1] Defendant, DNF ASSOCIATES, LLC ("DNF"), removed the matter to the instant forum.

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 3:22-cv-04108-JSC

ATLANTIC RECOVERY SOLUTIONS ("ARS") filed its Answer. (Doc. 18). On September 12, 2022, AGA withdrew his Motion to Dismiss, (Doc. 19), and filed his Answer. (Doc. 20).

On September 20, 2022, Plaintiff moved to strike certain of Defendants' affirmative defenses. (Doc. 21). On October 4, 2022, Defendants, ARS and AGA, filed a Motion seeking leave to amend their Answers. (Doc. 22). Plaintiff filed and Opposition, (Doc. 24), to which Defendants filed a Reply. (Doc. 26). On October 26, 2022, the Court entered its Order denying Defendant's Motion for leave to amend, and granting Plaintiff's Motion to strike. (Doc. 27). On November 11, 2022, the Court issued its Pretrial Order No. 1: Schedule Through Class Certification. (Doc. 38).

Thereafter on January 18, 2023, the Court appointed Celia McGuinness as Mediator, and ordered the parties to complete Mediation pursuant to the applicable ADR Local Rules. (See Doc. 43). On April 25, 2023, the parties participated in a Mediation with Ms. McGuinness, and the parties arrived at an agreement to settle the case. The parties now seek preliminary approval of the settlement. The Class Action Settlement Agreement ("Settlement Agreement") and its exhibits are filed herewith.

### III. SETTLEMENT TERMS

**A.  Proposed Settlement Class**

The parties request that the following settlement class be provisionally certified:

All persons with addresses in California to whom ATLANTIC RECOVERY SOLUTIONS, LLC, sent voicemail messages, and/or cellular telephone text messages, in an attempt to collected a defaulted consumer debt on behalf of DNF ASSOCIATES, LLC, which was originally owed to SALLIE MAE BANK, during the period beginning June 6, 2021, through the date of class certification.

Excluded from the Class would be any officers, directors or legal representatives of Defendants, and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff; and any Class Member who timely mails a request for exclusion.

Settlement Agreement ¶¶ 2.3-2.4.

---

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 3:22-cv-04108-JSC

### B.  Payments to Class Members, Plaintiff, and Counsel

Defendants will pay a class fund of $51,975.00 as a *pro rata* distribution to the Class Members pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii) and California Civil Code § 1788.17. Specifically, Defendant agrees to pay no less than $175.00 to each member of the Class who does not timely exclude himself or herself. Settlement Agreement ¶4.1. If there are opt-outs, the amount paid per Class Member will be recalculated on a *pro rata* basis. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, such funds will be redistributed to the Alexander Community Law Center in San Jose, as a *cy pres* recipient. Settlement Agreement ¶4.4. Defendants agree to pay $2,000.00 to Plaintiff as statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and California Civil Code § 1788.17. Settlement Agreement ¶4.2. Subject to Court approval, Defendants agree to pay Plaintiff a service award not to exceed $2,000 for her time and effort in bringing and presenting the action. Settlement Agreement ¶4.6. Defendants shall also cease collecting from Plaintiff the debt originally owed to Sallie Mae Bank. Settlement Agreement ¶4.5.

Defendants shall pay attorneys' fees and costs to proposed Class Counsel pursuant to 15 U.S.C. § 1692k(a)(3) and California Civil Code § 1788.17, as approved by the Court. Settlement Agreement ¶4.8. An application for approval of reasonable attorneys' fees and costs will be made separately, upon noticed motion, and determined at the Final Fairness Hearing, or at the Court's discretion. *Id.* Said fee includes all of the work remaining to be performed in documenting the Settlement Agreement, securing Court approval of the Settlement Agreement, making sure that the settlement is fairly administered, and obtaining dismissal of the action. Proposed Class Counsel is not seeking approval of fees and costs in this motion. At this time, proposed Class Counsel estimates that their lodestar is approximately $117,000, and that they will request approximately $123,500 in their forthcoming fee motion. The

Court should note that neither the amount of fees and costs to be sought by proposed Class Counsel, nor the ultimate amount of such fees and costs awarded by the Court, will impact the amount paid to the Class, as the settlement is not in the form of a "common fund recovery." Instead the statutory damages awarded to the Class are based upon the statutory cap set by 15 U.S.C. § 1692k(a)(2)(B)(ii) and California Civil Code § 1788.17 – *i.e.*, the lesser of $500,000 or 1% of the Defendants' net worth. The payments to the class were negotiated first, and separately, from the other settlement terms. See, *e.g.*, *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 444-47 (3d Cir. 2016) (deferring the discussion of fees until after substantive settlement terms are agreed upon is a practice routinely approved by courts).

### C.  Release by Class Members

In exchange for such award, the Class Members (those who do not timely opt-out) shall provide a narrowly tailored release of claims as follows:

> Upon the Court's entry of Final Order and Judgment, each Class Member, and Plaintiff, will release and forever discharge Defendants and all of Defendants' respective principals, members, subsidiaries, partners, officers, directors, shareholders, managers, employees, agents, representatives, successors, assigns, attorneys, and vendors, and insurance carriers (hereinafter collectively "the Released Parties"), from the Released Claims. This release includes "unknown claims" which encompass any and all claims alleging violation of California Civil Code §§ 1788-1788.33, and 15 U.S.C. §§ 1692-1692p, or similar or related claims or causes of action under state or federal law, arising from or relating to voicemail messages, and/or cellular telephone text messages, sent by, or on behalf of, Defendants in the form described in Plaintiff's Complaint herein, that Plaintiff or any Class Member does not know or even suspect to exist against any of the Released Parties, which, if known, might have affected his or her decision regarding the settlement of this matter. Plaintiff further acknowledges, and the Class Members shall be deemed to acknowledge, that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of this release, but nevertheless fully, finally, and forever settle and release any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or have existed, or could have existed, through the effective date of this Agreement, based upon actions or conduct occurring on or before the date of this Agreement, without regard to subsequent discovery or existence of such different or additional facts concerning each of the Released Parties. Without limiting the scope of the foregoing, Plaintiff and Class Members intend this release to be broad enough to

- 5 -

include a waiver of all their rights under section 1542 of the California Civil Code with respect to any alleged violation of California Civil Code §§ 1788-1788.33, and 15 U.S.C. §§ 1692-1692p, or similar or related claims or causes of action under state or federal law, arising from or relating to voicemail messages, and/or cellular telephone text messages, sent by, or on behalf of, Defendants in the form described in Plaintiff's <u>Complaint</u> herein.

<u>Settlement Agreement</u> ¶7.1.

### D.  Notice and Settlement Administration

Subject to Court approval, the Parties have designated American Legal Claim Services, LLC ("ALCS"), as the settlement class administrator. Defendants will provide Plaintiff and ALCS with a list of Class Members and their addresses, based on Defendants' records. Not later than twenty-five (25) days following the Preliminary Approval Date, the settlement administrator will mail the Class Notice to each Class Member. Prior to mailing the notice, the settlement administrator shall obtain a current address for the Class Members by running the last known address reflected in Defendant's records for each Class Member through the U.S. Postal Service National Change of Address database. The envelopes in which the settlement administrator mails the class notice to the Class Members must include a notation requesting address correction. If any notice is returned with a new address, the settlement administrator must resend the class notice to the new address. The settlement administrator is not responsible for the postal service's failure to timely deliver the class notice to a particular Class Member, and the settlement administrator will not have any obligation to resend a notice that is not returned by the postal service before the final Fairness Hearing. <u>Settlement Agreement</u> ¶3.4.

### E.  Opt-Out and Objection Process

Class Members need not submit any paperwork to receive monies pursuant to the <u>Settlement Agreement</u>. All members of the Class shall be considered Settlement Class Members unless they affirmatively opt-out of the settlement. Any Class Member can seek to be excluded from this Settlement Agreement and from the Class, within the time and in the manner provided by Court Order.

---

- 6 -

Settlement Agreement ¶¶5.1-5.3. Class Members may also object to the settlement within the time and in the manner provided by Court Order. Settlement Agreement ¶6.1.

### F. Payment of Administrative Costs

The Settlement Agreement provides that Defendants shall pay for all costs associated with Class Notice and class administration, separately and in addition to its payments to the Class Members and to Plaintiff. Settlement Agreement ¶4.7. Because the settlement is not in the form of a "common fund recovery," payment of administrative costs will not reduce the benefits made available to the Class.

### IV. ARGUMENT

### A.  Certification of the Settlement Class

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. P. 23(e). Where parties in a putative class action reach a settlement agreement before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). This determination is undertaken "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." See *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

### 1. Rule 23(a) Requirements

Rule 23(a) establishes four prerequisites for class certification: 1) numerosity; 2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

### a.  Numerosity

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir.

2010). In this case, there are approximately 297 settlement Class Members. That number is so large as to make joinder impracticable. Numerosity is therefore satisfied.

### b. Commonality

The commonality requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In other words, the class claims must "depend upon a common contention… capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In addition, commonality requires that Class Members "have suffered the same injury." *Id*.

In this case, the Class's claims depend on the resolution of several common contentions. All Class Members were sent similar collection communications regarding a debt originally owed to Sallie Mae Bank. The principal issues of law are whether Defendants' collection communications violated the FDCPA and the RFDCPA by: 1) failing to meaningfully disclose Defendants' identity and the nature of Defendants' business; 2) failing to disclose that the message was a communication from a debt collector in an attempt to collect a debt; 3) attempting to instill a false sense of urgency in the consumer; and 4) falsely representing or implying that a civil lawsuit would be filed, or had been filed, to collect a defaulted consumer debt, when no such civil lawsuit was intended to be filed or had in fact been filed. Commonality is therefore satisfied.

### c. Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The representative claims are typical if they are reasonably co-extensive with those of absent class members, though they need not be substantially identical." *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 4,

2013), citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In *Abels v. JBC Legal Grp., P.C.*,227 F.R.D. 541, 545 (N.D. Cal. 2005), the Northern District of California noted as follows:

> "Each of the class members was sent the same collection letter as [plaintiff] and each was allegedly subjected to the same violations of the FDCPA. Therefore, this Court concludes that claims of the class representative arc [sic] typical of the claims of the class."

Similarly, in the instant case, Defendants sent similar voicemail and/or cellular telephone text messages to Plaintiff and the Class in an attempt to collected defaulted consumer debts, which Plaintiff claims violates the FDCPA and the RFDCPA. Thus, as in *Abels*, typicality is inherent in the class definition, *i.e.*, each of the Class Members was subject to the same demands and violations of the FDCPA and RFDCPA as Plaintiff. The typicality requirement of Rule 23(a)(3) is satisfied.

### d. Adequacy of Representation

Representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020, citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

In this case, Plaintiff does not have any conflicts of interest with other Class Members. She suffered the same alleged statutory injury as all other Class Members, shares with the Class the common goal of protecting consumer rights granted under fair debt collection statutes, and in recovering damages for Defendants' alleged violations of those statutes. Plaintiff and proposed Class Counsel have vigorously prosecuted this action on behalf of the class to achieve these goals.

In addition, proposed Class Counsel have significant experience, in this and other courts, prosecuting class actions relating to consumer rights, including FDCPA actions. See supporting Declarations of Fred W. Schwinn, Raeon R. Roulston, and Matthew C. Salmonsen filed herewith. For

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 3:22-cv-04108-JSC

these reasons, Plaintiff has satisfied the prerequisites of Rule 23(a) and request that the Court appoint Fred W. Schwinn, Raeon R. Roulston, and Matthew C. Salmonsen of Consumer Law Center, Inc., as counsel for the Class.

### 2. Rule 23(b)(3) Requirements

Additionally, the Court must find that: 1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and 2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Predominance

The relevant inquiry for predominance is whether issues "subject to generalized proof … predominate over those issues that are subject only to individualized proof." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 634 (S.D. Cal. 2010). The Rule 23(b)(3) predominance inquiry is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623. In this case, the "common nucleus of operative fact," is that all Class Members, by definition, were subjected to Defendants' policy of sending similar voicemail and/or cellular telephone text messages in an attempt to collected defaulted consumer debts, which are alleged to violate the FDCPA and/or the RFDCPA. The legal issues arising from Defendants' collection communications are the same for each Class Member.

Cases dealing with the legality of standardized documents and practices are generally appropriate for resolution by class action because the document is the focal point of the analysis. In *Abels*, *supra*, the court stated in support of certifying the class:

> The common fact in this case is that the putative class members were subjected to Defendants' policy of sending collection letters, which are alleged to violate the FDCPA. Thus, the legal issues arising from Defendants' letters are the same for each class member. Here, the issues common to the class - namely, whether the Defendants'

- 10 -

systematic policy of sending collection letters, and whether those letters violate FDCPA - are predominant. Plaintiff's Complaint centers around these issues.

*Abels*, 227 F.R.D. at 547.

This case is similar to *Abels*. The only individual issue is the identification of the consumers who were subjected to Defendants' practice and policy of sending the subject voicemail and/or cellular telephone text messages. This is a matter capable of ministerial determination from Defendants' records. This is not the kind of problem that is a barrier to class certification. In this case, it is clear that both the Class's factual issues and the issues of law predominate over any individual questions.

### b. Superiority

The class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996). Consideration of the factors listed in Rule 23(b)(3) supports certification of the settlement class. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems."*Amchem Prods.*, 521 U.S. at 620.

Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification: Each Class Member's individual stake in the litigation is so small that there is little incentive to bring an individual action. See *Amchem Prods.*, 521 U.S. at 616. Further, any Class Member who wishes to pursue a separate action can opt out of the settlement. In addition, the parties are unaware of any competing

litigation regarding the claims at issue, and the parties agree that it would be desirable to resolve the Class's claims in this forum. Accordingly, the superiority requirement is satisfied.

For these reasons, the Court should preliminarily certify the settlement class for purposes of the proposed settlement.

## B. The Settlement is Fair, Adequate, and Reasonable

Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") § 21.63, *et seq.*, including preliminary approval, dissemination of notice to class members, and a fairness hearing. Manual, § 21.632 (4th ed. 2004).

The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. See 4 Herbert B. Newberg, Newberg on Class Actions § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004) ("Newberg"). The Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."

To make the preliminary fairness determination, courts may consider several relevant factors, including the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel …" See *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004), citing *Hanlon*, 150 F.3d at 1026; and *Staton*, *supra*, 327 F.3d at 959. Courts must also give "proper deference

- 12 -

to the private consensual decision of the parties," as "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.

"Given that some of these 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing, a full fairness analysis is not necessary for preliminary approval." *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013), quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). At the preliminary approval stage, the Court need only review the parties' proposed settlement to determine if it is within the permissible 'range of possible approval' and thus, if the notice to the Class and the scheduling of the formal fairness hearing is appropriate. See *Lusby*, 297 F.R.D. at 413, citing *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

**1. The Strength of Plaintiff's Case; The Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class Action Status Throughout the Trial.**

While Plaintiff strongly believes in her case, she also understands that there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case. Plaintiff believes that the claims in this action are legally meritorious, and present a reasonable probability of a favorable determination on behalf of the Class, as is amply borne out by the amount offered in settlement. Yet, significant litigation risk is avoided by the Settlement Agreement, whether at class certification proceedings, at trial, or in the appellate courts. Moreover, available to Defendants was the "*bona fide* error" affirmative defense, wherein Defendants could argue that the offending collection communications resulted from a "*bona fide* error," notwithstanding the maintenance of procedures reasonably adopted to avoid any such error. This affirmative defense, if proven at trial,

- 13 -

would provide a complete defense to Plaintiff's claims, and result in no recovery for Plaintiff or the putative class. While Plaintiff does not agree with this analysis, Defendants believe that their positions as set forth in their respective Answers are supported by decisions in this Judicial District.

These factors thus weigh in favor of preliminary approval of the settlement.

## 2. The Amount offered in the Settlement

A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Linney*, *supra*, 151 F.3d at 1242, citing *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). "Of course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624, citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). In exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney*, *supra*, quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2nd Cir. 1974).

Plaintiff's <u>Complaint</u> alleges violations of the FDCPA and RFDCPA. The FDCPA and the RFDCPA both provide for the recovery of statutory damages by successful plaintiffs in an amount to be determined by the Court. These statutory damages may not exceed $1,000 in an individual action, and may not exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector in a class action. 15 USC § 1692k(a)(2). The 9th Circuit has not decided whether damages awarded cumulatively

- 14 -

under the FDCPA and the RFDPCA in a single action may exceed the FDCPA's $500,000 limitation on statutory damages. See *Gonzales v. Arrow Financial Services*, 660 F.3d 1055, 1068 (9th Cir. 2011). Courts have discretion to determine the appropriate amount of statutory damages based on a number of factors. 15 USC § 1692k(b). Thus, courts may award far less than the maximum allowed by the statute. See *e.g.*, *Prof'l Collection Consultants v. Lujan*, 23 Cal.App.5th 685 (Cal. App. 1st Dist. 2018) ($140,550.51 in fees and costs including a 1.5 multiplier, where trial court awarded no actual or statutory damages to consumer).

The parties' <u>Settlement Agreement</u> provides each Class Member a payment of no less than $175.00, their *pro rata* share should no Class Member opt out of the settlement submit a claim. This is a substantial monetary recovery that is not just comparable to, but far exceeds the relief provided in many other class action settlements approved in fair debt collection cases. See, *e.g.*, *del Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 595-96 n.9 (N.D. Cal. 2008) ($ 0.00000111 per class member); *Abels*, 227 F.R.D. at 546-57 ($ 0.25 per class member); *Rhodes v. Olson Assocs., P.C.*, 83 F.Supp.3d 1096 (D. Colo. 2015) (preliminarily approving settlement allowing for as little as $7.10 per class member); *Little-King v. Hayt Hayt & Landau*, 2013 U.S. Dist. LEXIS 129587 (D. N.J. Sep. 10, 2013) ($40,000 fund for class of 49,156 resulted in recovery of $7.87 per claimant); *Jerman v. Carlisle*, 271 F.R.D. 572, 576-77 (N.D. Ohio 2010) (certifying class even though cap on damages under FDCPA would limit relief to $3.10 per class member); *Hicks v. Client Servs., Inc.*, 257 F.R.D. 699, 700-01 (S.D. Fla. 2009) (approving settlement where the maximum per-member recovery was $1.24); *Jancik v. Cavalry Portfolio Servs., LLC*, 2007 U.S. Dist. LEXIS 49500 (D. Minn. July 3, 2007) (certifying FDCPA class where class members could have recovered $6.94 each); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (proposed settlement fund of $21,759 would net class members approximately $7.32); *Cope v. Duggans*, 203 F.Supp.2d 650, 653 (E.D. La. 2002) (approving

MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 3:22-cv-04108-JSC

FDCPA settlement where class members returning claim forms would receive only $11.90 each).

A class action settlement can be fair even if the Class Members recover small amounts. As the U.S. Supreme Court has reasoned, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods.*, 521 U.S. at 617. Thus, the settlement amount is fair, appropriate, and reasonable, especially in light of the anticipated, risk, expense, and uncertainty of continued litigation as discussed above.

### 3. The Extent of Discovery and the Stage of the Proceedings

In a class action, "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. In this case, the parties did engage in substantial formal discovery. This included the review of nearly 600 pages of documents, which was necessary to identify the Class Members, to investigate the merits of Defendants' defenses, and to determine net worth. See Declaration of Fred W. Schwinn ¶¶15-19. The parties have thoroughly investigated and evaluated the factual strengths and weaknesses of the case, and have engaged in sufficient discovery to support settlement.

In addition, the settlement resulted from a Mediation session with the Court's appointed Mediator, including submission of detailed Mediation Statements by the parties. This supports preliminary approval as well, as it strongly suggests that there was no collusion. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).

### 4. Experience of Class Counsel

Proposed Class Counsel have experience litigating class actions relating to consumer rights,

---

including FDCPA actions. Fred W. Schwinn, Raeon R. Roulston, and Matthew C. Salmonsen are well qualified to serve as Class Counsel in this matter, and numerous courts have noted as such. See supporting Declarations of Fred W. Schwinn, Raeon R. Roulston, and Matthew C. Salmonsen filed herewith. Plaintiff's Counsel further believe that this is a fair and reasonable settlement in light of the uncertainties of certification and litigation. This factor thus weighs in favor of preliminary approval. See *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); and *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

For these reasons, the Court should find that the settlement is fair, adequate, and reasonable.

### C.  The Proposed Method of Class Notice is Appropriate

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to Class Members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

In this case, the parties have agreed to send the Settlement Notice via first class mail to the last known address of the Class Members as indicated by Defendants' business records, and a search of the national change of address registry in case any of those addresses have changed. Settlement Agreement ¶3.4. This is the best form of notice practicable.

Class Members will have sixty (60) days to opt out or object, and the notices will be disseminated sufficiently prior to the Final Approval hearing to give Class Members the chance to

- 17 -

comment on the settlement, or to opt out and preserve their rights. See *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement), citing *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of a notice which was mailed 26 days before the deadline for opting out of a settlement).

Finally, Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). In this case, the Settlement Notice meets all of these requirements and should be approved by the Court. See proposed Class Notice, attached as Exhibit "1" to the Settlement Agreement.

### D. Final Approval Hearing

The last step in the settlement approval process is the formal Final Approval Hearing or Fairness Hearing, at which time the Court may hear all evidence and argument for and against the Settlement to evaluate its merits and determine whether it should be approved. The parties request that the hearing be held not before 135 days after the date of entry of the Preliminary Approval Order to allow sufficient time for providing the direct mail notice, and for the 60-day opt-out and objection period to run.

## V.  CONCLUSION

On behalf of the parties, Plaintiff respectfully requests that the Court enter an order preliminarily approving the parties' proposed settlement.

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 3:22-cv-04108-JSC

1

2

Dated:  August 24, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSUMER LAW CENTER, INC.


By: _____
☐ Fred W. Schwinn (SBN 225575)
☐ Raeon R. Roulston (SBN 255622)
☐ Matthew C. Salmonsen (SBN 302854)
CONSUMER LAW CENTER, INC.
38 West Santa Clara Street
San Jose, California  95113-1806
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

Attorneys for Plaintiff
HARRIET GATCHALIAN

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 3:22-cv-04108-JSC