UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRIET GATCHALIAN,<br><br>    Plaintiff,<br><br>    v.<br><br>ATLANTIC RECOVERY SOLUTIONS, LLC, et al.,<br><br>    Defendants. | Case No. 22-cv-04108-JSC<br><br>**ORDER RE PARTIES' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION**<br><br>Re: Dkt. No. 48 |

Plaintiff brings this putative consumer class action against Defendants for abusive, deceptive, and unfair debt collection practices. (Dkt. No. 1-1.)[1] Pursuant to Federal Rule of Civil Procedure 23, the parties now move for provisional certification of a class exclusively for settlement purposes, preliminary approval of a proposed class action settlement, and a stay pending final approval. (Dkt. No. 48.) Having carefully considered the motion, the Court concludes oral argument is unnecessary, *see* Civ. L. R. 7-1(b), and GRANTS the parties' motion.

**BACKGROUND**

Plaintiff allegedly incurred and defaulted on a consumer debt transferred to DNF Associates, LLC, which then directed Atlantic Recovery Solutions, LLC to collect the debt from Plaintiff. (*Id.* ¶¶ 18-21.) From June 2021 to October 2021, Atlantic Recovery Solutions left numerous voicemails on and sent various text messages to Plaintiff's cellular telephone, representing Atlantic Recovery Solutions needed to speak with Plaintiff or her legal representation immediately regarding documentation forwarded for legal review, "a legal required notice," "[her] filed case," Atlantic Recovery Solutions' "need to make a negative recommendation on [her]

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1    behalf," and "employment verification with [her] employer." (*Id.* ¶¶ 22-37.)

2    Plaintiff seeks statutory damages against Defendants under the California Rosenthal Fair

3    Debt Collection Practices Act, California Civil Code §§ 1788-1788.33, and the federal Fair Debt

4    Collection Practices Act, 15 U.S.C. §§ 1692-1692p, for Defendants'

> routine practice of sending voicemail and cellular telephone text messages, like those sent to Plaintiff, which fails to disclose: 1) Defendants' identity, 2) the nature of Defendants' business, and 3) that each message was a communication from a debt collector in an attempt to collect a debt; and which attempt to instill a false sense of urgency in the consumer by falsely representing or implying that a civil lawsuit would be filed, or had been filed, to collect a defaulted consumer debt, when no such civil lawsuit was intended to be filed or had in fact been filed.

(Dkt. No. 1-1 ¶ 5.)

At mediation, the parties agreed to settle the case. (Dkt. No. 44.) The parties now seek preliminary approval of the class action settlement.

## SETTLEMENT AGREEMENT

### A. Class

The parties request the Court provisionally certify a class composed of all persons with addresses in California to whom Atlantic Recovery sent voicemail messages and/or text messages in an attempt to collect defaulted consumer debt on behalf of DNF Associates, which was originally owed to Sallie Mae Bank, from June 6, 2021, through the date of class certification. (Dkt. No. 48-2 ¶ 2.3.) Excluded from the class are any class members who timely mail a request for exclusion; any officers, directors, or legal representatives of Defendants; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff. (*Id.* ¶ 2.4.)

### B. Payment Terms

The settlement agreement requires Defendants to pay a class fund of $51,975.00 as a pro rata distribution to class members, which will amount to no less than $175.00 to each class member, under 15 U.S.C. § 1692k(a)(2)(B)(ii) and California Civil Code § 1788.17. (*Id.* ¶ 4.1.) To the extent any settlement checks remain uncashed 90 days from the date of their mailing, the uncashed amount will be paid to the Alexander Community Law Center in San Jose, California, as

2

a cy pres recipient. (*Id*. ¶ 4.4; *see* Dkt. No. 48-5 ¶¶ 4-9.) Defendants will pay Plaintiff $2,000.00 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) and California Civil Code § 1788.17, (Dkt. No. 48-2 ¶ 4.2), and $2,000.00 as a service award, (*id*. ¶ 4.6), and will cease collecting from Plaintiff the debt originally owed to Sallie Mae Bank. (*Id*. ¶ 4.5.)

Under the settlement agreement, Defendants must pay attorneys' fees and costs to proposed class counsel pursuant to 15 U.S.C. § 1692k(a)(3) and California Civil Code § 1788.17. (*Id*. ¶ 4.8.) Proposed class counsel estimates their lodestar is approximately $117,000 and they will request approximately $123,500 in their forthcoming fee motion. (Dkt. No. 48-1 at 10.)

### C. Scope of Release

Each class member will "release and forever discharge Defendants and all of Defendants' respective principals, members, subsidiaries, partners, officers, directors, shareholders, managers, employees, agents, representatives, successors, assigns, attorneys, and vendors, and insurance carriers," (Dkt. No. 48-2 ¶ 7.1), from "all claims alleging violation of California Civil Code §§ 1788-1788.33 and/or 15 U.S.C. §§ 1692-1692p, or similar or related claims or causes of action under state or federal law, arising from or relating to voicemail messages, and/or cellular telephone text messages, sent by or on behalf of, Defendants in the form described in Plaintiff's Complaint herein, which were sent within the Class Settlement Period." (*Id*. ¶ 2.17.) Thus, under the settlement, class members waive all rights under California Civil Code § 1542 as to any alleged violation of California Civil Code §§ 1788-1788.33 and 15 U.S.C. §§ 1692-1692p, as well as similar or related claims arising from Defendants' conduct as described in Plaintiff's complaint. (*Id*. ¶ 7.1.)

The settlement's release includes "unknown claims," meaning class members' released claims include those "Plaintiff or any class member does not know or even suspect to exist against any of the Released Parties, which, if known, might have affected his or her decision regarding the settlement of this matter," and further, claims "known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or have existed, or could have existed, through the effective date of this Agreement, based upon actions or conduct occurring on or before the date of this Agreement, without regard to subsequent discovery or existence of such different or additional

3

facts concerning each of the Released Parties." (*Id.* ¶ 7.1.)

**D. Notice**

The parties have designated American Legal Claim Services, LLC as the settlement class administrator. (Dkt. No. 48-1 at 12.) Defendants will provide Plaintiff and American Legal Claim Services a list of class members and their addresses based on Defendants' records within five business days of the settlement's execution. (*Id.*; Dkt. No. 48-2 ¶ 3.4.) American Legal Claim Services will obtain the current address of each class member by running the last known address reflected in Defendants' records for each class member through the U.S. Postal Service National Change of Address database. (Dkt. No. 48-2 ¶ 3.4.) Not later than 25 days after the preliminary approval date, American Legal Claim Services will mail the class notice to each class member. (*Id.*) All envelopes in which American Legal Claim Services mails the class notice to class members will include a notation requesting address correction, and if any notice is returned with a new address, American Legal Claim Services will resend the class notice to the new address. (*Id.*) American Legal Claim Services is not responsible for the postal service's failure to timely deliver the class notice to class members and will not have any obligation to resend a notice that is not returned by the postal service before the final fairness hearing. (*Id.*) Defendants will bear the cost of distributing the class notice and related expenses. (*Id.* ¶ 3.5.)

**E. Opt-Outs and Objections**

Class members who wish to exclude themselves from the class action settlement must mail a written request for exclusion to class counsel, or American Legal Claim Services, postmarked no later than 60 days after the preliminary approval date. (*Id.* ¶ 5.1.) The written request must include the case name and number for this action; the class member's full name, address, and telephone number; and a statement affirming the class member's wish to be excluded from the class action settlement. (*Id.* ¶ 5.2.)

Class members who wish to object to the class action settlement must mail a written notice of objection to the Court, postmarked no more than 60 days after the Initial Notice Date, or, alternatively, object orally at the final approval hearing. (*Id.* ¶ 6.1.) The written notice must include the case name and number for this action; the class member's full name, address, and

1  telephone number; a statement of each objection; description of the facts and law underlying each
2  objection; a statement noting whether the class member intends to appear at the fairness hearing; a
3  list of all witnesses the class member intends to call by live testimony, deposition testimony, or
4  affidavit or declaration testimony; and a list of exhibits the class member intends to present at the
5  final fairness hearing.  (*Id*. ¶ 6.2.)

## DISCUSSION

A class proposed for the purposes of settlement requires the Court's approval to be certified.  Fed. R. Civ. P. 23(e).  Because the parties have reached a settlement agreement before class certification, the Court "must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  At the preliminary approval stage, the court grants approval only if justified by the parties' showing the court will likely be able to (1) certify the class for purposes of judgment on the proposal and (2) approve the proposal under Rule 23(e)(2).  *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 2817588, at *3 (N.D. Cal. July 19, 2022); *see* Fed. R. Civ. P. 23(e)(1)(B).  If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," the class will be notified, and a final fairness hearing will be scheduled to determine if the settlement is fair, adequate, and reasonable under Federal Rule of Civil Procedure 23.  *Ramirez*, 2022 WL 2817588, at *3.

### A.  Conditional Class Certification

A class must meet each requirement of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Under Rule 23(a), there are four prerequisites for class action certification:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Of the requirements of Federal Rule of Civil Procedure 23(b), the parties contend the proposed class meets the requirements of Rule 23(b)(3).  (Dkt. No. 48-1 at 16-18.)

5

1  Under Rule 23(b)(3), "the questions of law or fact common to class members [must] predominate
2  over any questions affecting only individual members," and "a class action [must be] superior to
3  other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.
4  23(b)(3).

####   a.  Rule 23(a) Requirements

Each of the Rule 23(a) factors are satisfied.

#####    i.  Numerosity

Numerosity requires the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, the numerosity requirement is satisfied where a class includes at least 40 members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, the numerosity requirement is satisfied because "there are approximately 297 settlement Class Members." (Dkt. No. 48-1 at 14.)

#####    ii.  Commonality

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Parties seeking class certification must prove their claims depend on a common contention of such a nature it is capable of class-wide resolution, meaning the determination of its truth or falsity will resolve an issue central to the validity of each claim at once. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Class-wide proceedings must generate common answers to common questions of law or fact apt to drive resolution of the litigation. *Id*. The parties must demonstrate class members have suffered the same injury. *Id*. at 349-350.

The parties identify common contentions and demonstrate class members suffered the same injury. All class members were sent similar debt collection communications by Defendants regarding a defaulted debt originally owed to Sallie Mae Bank. The principal issues of law are whether Defendants' collection communications violated the California Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.33, and the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, by failing to disclose

> 1) Defendants' identity, 2) the nature of Defendants' business, and 3) that each message was a communication from a debt collector in an attempt to collect a debt; and which attempt to instill a false sense of

6

> urgency in the consumer by falsely representing or implying that a civil lawsuit would be filed, or had been filed, to collect a defaulted consumer debt, when no such civil lawsuit was intended to be filed or had in fact been filed.

(Dkt. No. 1-1 ¶ 5.) Commonality is thus satisfied. *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) ("Rule 23(a)(2) requires a single significant question of law or fact." (cleaned up)); *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (ruling commonality existed where class members all received debt collection letters at their place of employment without consent and the issue was violation of the Fair Debt Collection Practices Act); *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008) ("Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.").

### iii. Typicality

Typicality requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon*, 688 F.3d at 1030 (cleaned up). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

Defendants sent similar voicemail and/or cellular telephone text messages to plaintiff and the class members attempting to collect defaulted consumer debts allegedly in violation of the California Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.33, and the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p. As in *Abel*, Plaintiff's claims are typical of the claims of the class because each class member was sent similar collection communications and thus were subjected to the same violations of California and federal law. *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) ("Each of the class members was sent the same collection letter as Abels and each was allegedly subjected to the same violations of the FDCPA. Therefore, this Court concludes that claims of the class representative are typical of the claims of the class. Accordingly, the typicality requirement is

met."). Typicality is satisfied.

####    iv. Adequacy of Representation

Adequacy of representation requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon*, 688 F.3d at 1031 (cleaned up).

There is no reason Plaintiff will be unable to "fairly and adequately protect the interests of the class" under Rule 23(a)(4) for purposes of statutory damages claims. Plaintiff has no conflicts of interest with other class members, suffered the same alleged statutory injury as all other class members, shares with the class the common goal of protecting consumer rights granted under fair debt collection statutes and recovering damages for Defendants' alleged violations of state and federal law. Proposed class counsel has significant experience prosecuting consumer class actions, including Fair Debt Collection Practices Act actions. (Dkt. No. 48-2 ¶¶ 3-11.) Plaintiff and proposed class counsel are adequate for purposes of Rule 23(a)(4).

### b. Rule 23(b)(3) Requirements

Both the predominance and superiority requirements are satisfied under Rule 23(b)(3).

####    i. Predominance

"The first requirement of Rule 23(b)(3) is predominance of common questions over individual ones." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement," and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). "In addressing the questions of law or fact common to the members, the Court looks at common factual link between all class members and the defendants for which the law provides a remedy." *Abels*, 227 F.R.D. at 547. If a common question will drive the resolution of the litigation, the class is sufficiently cohesive. *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020). "[A] central concern of the Rule 23(b)(3)

predominance test is whether adjudication of common issues will help achieve judicial economy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (cleaned up).

In this case, the same common legal questions qualify each class member's case as a genuine controversy such that the proposed class is sufficiently cohesive to warrant adjudication by representation. As in *Abels*, the common fact is all class members were subjected to Defendants' policy of sending collection communications via similar voicemail and/or text messages to collect defaulted consumer debts in violation of California and federal law. *Abels*, 227 F.R.D. at 547 ("The common fact in this case is that the putative class members were subjected to Defendants' policy of sending collection letters, which are alleged to violate the [Fair Debt Collection Practices Act]. Thus, the legal issues arising from Defendants' letters are the same for each class member."). Here, the issues are common to the class: whether it was Defendants' standard practice and policy to send collection communications via voicemail and/or cellular telephone text messages without adequate disclosures and with implicit threats, and whether those collection communications violate California Civil Code §§ 1788-1788.33 and 15 U.S.C. §§ 1692-1692p. The only individual issue is the identification of consumers who were subjected to Defendants' standard practice and policy of collection communications, which the parties assert can be determined through Defendants' records. The common issues predominate, and Plaintiff's complaint hinge on these common issues.

### ii. Superiority

Finally, the class action mechanism is the superior method for adjudicating this lawsuit. Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d at 1234–35 (9th Cir. 1996). Factors relevant to the superiority requirement include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

       (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) ("In determining superiority, courts must consider the four factors of Rule 23(b)(3).")  "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190.  However, where "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prod., Inc.*, 521 U.S. at 620.

       Rule 23(b)(3)(A), (B), and (C) favor class certification.  Each class member's individual stake in the litigation is small, so there is little incentive to bring an individual action.  *Id.* at 616.  Likewise, any class members' interest in individually controlling the prosecution of separate actions is minimal.  Any class member who wishes to pursue a separate action is free to opt out of the settlement.  Additionally, there is not similar litigation already underway elsewhere weighing against proceeding as a class here, nor any reason not to try a class action in this District.  A class here would achieve economies of time, effort, and expense, and promote uniformity.  The class action mechanism is the superior method for adjudicating Plaintiff and class members' claims against Defendants.

\* \* \*

       Accordingly, conditional certification of the class for settlement purposes is proper.

**B. Preliminary Approval of Settlement Agreement**

       In making a preliminary determination of the fairness, adequacy, and reasonableness of a class action settlement agreement, courts must ensure the settlement did not result from collusion among the parties and consider

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the

> stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Because collusion may not be evident on a settlement's face, courts must be vigilant for subtle signs "class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id*. at 947. "A few such signs are:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
> (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (cleaned up).

However, the Court cannot fully assess such factors until the final approval hearing, so "a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). "At the preliminary approval stage, the settlement need only be potentially fair." *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 2817588, at *4 (N.D. Cal. July 19, 2022). Preliminary approval is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

### a. Fairness Factors
#### i. Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement."

11

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (cleaned up).  Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*.

Plaintiff's counsel submit declarations in support of their motion for preliminary approval detailing their experience and this action's litigation history and settlement negotiation.  (Dkt. Nos. 48-2, 48-3, 48-4, 48-5.)  On June 6, 2022, Consumer Law Center, Inc., filed Plaintiff's complaint in the Superior Court of California, County of Santa Clara, alleging Defendants violated various provisions of California and federal fair debt collection practices law by making false, deceptive, and misleading representations in debt collection communications to collect defaulted debts.  (Dkt. No. 48-2 ¶¶ 12-13.)  On July 13, 2022, Defendants removed to this Court.  (Dkt. No. 1.)  Plaintiff propounded written discovery on each of the Defendants, to which Defendants responded and produced documents and audio recordings in December 2022 and January 2023.  (Dkt. No. 48-2 ¶¶ 15-18.)  Plaintiffs also served subpoena requests on two third parties, to which one third party responded in January 2023.  (*Id*. ¶ 19.)  On January 18, 2023, the Court appointed Celia McGuinness as mediator and ordered the parties to complete mediation.  (Dkt. Nos. 42, 43.)  On April 25, 2023, the parties participated in a mediation session resulting in settlement.  (Dkt. No. 44.)  The parties finalized a settlement agreement on July 18, 2023.  (Dkt. No. 48-2 ¶ 20.)

Plaintiff's counsel claims the settlement emerged from communication with Plaintiff, research into her causes of action, the drafting and filing of the complaint, the issuance of and responses to written discovery, review of Defendants' document production, confirmatory discovery on the proposed class list, mediation, negotiation of a settlement agreement, and preparation of preliminary approval papers.  (*Id*. ¶ 23.)  "In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (cleaned up).  But here the parties did engage in formal discovery, including document review.  (Dkt. No. 48-2 ¶¶ 15-19.)  Further, the settlement resulted from a mediation session with the Court's appointed mediator, who required submission of detailed mediation statements from the parties.  (Dkt. No. 48-1 at 22.)  The use of an experienced

12

1  mediator and presence of discovery supports the conclusion Plaintiffs were armed with sufficient
2  information to broker a fair settlement. *Dixon v. Cushman & Wakefield W., Inc.*, No. 18-CV-
3  05813-JSC, 2021 WL 3861465, at *10 (N.D. Cal. Aug. 30, 2021); *In re Wireless Facilities, Inc.*
4  *Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery
5  and genuine arms-length negotiation are presumed fair."). As such, the settlement agreement
6  appears to be the product of serious, informed, non-collusive negotiations. Accordingly, this
7  factor weighs in favor of preliminary approval.

### ii. Obvious Deficiencies

The Court must next consider whether there exists any obvious deficiencies in the settlement agreement. *Harris*, 2011 WL 1627973, at *8. Though the Court had concerns regarding the class notice and required more information to evaluate the amount of the settlement, (*see* Dkt. No. 51), the parties' supplemental briefing resolved the Court's issues. (Dkt. Nos. 53, 54.) No obvious deficiencies exist on the face of the settlement agreement to preclude preliminary approval.

### iii. Lack of Preferential Treatment

The Court must next examine whether the settlement agreement "provides preferential treatment to any class member." *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012). Under the proposed settlement, all class members are treated the same in that each will receive the same pro rata monetary distribution from the settlement fund, which will amount to no less than $175.00 to each member who does not timely opt out.

The settlement agreement also provides Defendants shall pay Plaintiff $2,000 in statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and California Civil Code § 1788.17. (Dkt. No. 48-2 ¶ 4.2.) Plaintiff will also receive $2,000 from Defendants as a service award. (*Id.* ¶ 4.6.) "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). Service awards "are

13

intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Id*. at 958-59.  Although service awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id*. at 960 (cleaned up).

The settlement includes a service award to Plaintiff "for her time and effort in bringing and presenting the action." (Dkt. No. 48-1 at 10.)  The Court will defer ruling on the appropriateness of the amount of the requested settlement and service award until final approval.  However, at this stage, there is no indication the service award constitutes "preferential treatment" or should defeat preliminary approval.

### iv. Range of Possible Approval

In determining whether the settlement agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and consider the "expected recovery balanced against the value of the settlement offer."  *See Tableware*, 484 F. Supp. 2d at 1080; *see also Harris*, 2011 WL 1627973, at *11 (noting courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" in determining "the value of the settlement against the expected recovery at trial." (cleaned up)).  "A proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Given Defendants' net worth, Plaintiff's counsel believes the recovery of $51,975.00 is fair and reasonable under 15 U.S.C. § 1692k(a)(2), and it is in the best interest of the putative class to accept a compromise guaranteeing an immediate recovery.  (Dkt. No. 48-2 ¶ 24.)  While Plaintiff believes her claims are legally meritorious and present a reasonable probability of a favorable determination on behalf of the proposed class, the settlement agreement allows Plaintiff and class

14

1  members to avoid the significant litigation risk of class certification proceedings, trial, and appeal.
2  (Dkt. No. 48-1 at 19); *Linney*, 151 F.3d at 1242 ("[I]t is the very uncertainty of outcome in
3  litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.
4  The proposed settlement is not to be judged against a hypothetical or speculative measure of what
5  might have been achieved by the negotiators."). The parties note the "*bona fide* error" affirmative
6  defense was available to Defendants, which could constitute a complete defense to Plaintiff's
7  claims and result in no recovery for Plaintiff or the putative class if Defendants were to prove the
8  offending collection communications resulted from a "*bona fide* error" notwithstanding the
9  maintenance of procedures reasonably adopted to avoid such errors. (Dkt. No. 48-1 at 19-20.)

10       The settlement agreement provides each class member will receive a payment of no less
11  than $175.00. (Dkt. No. 48-2 ¶ 4.1.) Plaintiff's counsel argues this pro rata share constitutes
12  substantial monetary recovery far exceeding the relief provided in other class action settlements
13  approved in fair debt collection cases. (Dkt. No. 48-2 ¶ 25); *see, e.g.*, *del Campo v. Am.*
14  *Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 596 (N.D. Cal. 2008) (approving settlement of
15  $0.0027 to a sub-class of 667,574 because the debt collector "represented its net worth to be
16  $180,517. If this is indeed the case, the entire class of Plaintiffs would share $1805 between them
17  as a measure of statutory damages under the FDCPA." (cleaned up)); *Abels*, 227 F.R.D. at 546–47
18  ("Here, the Defendants admit that Defendant JBC's net worth is $250,000. . . .[I]f liability is
19  established and statutory damages are due to the class members, the Court would necessarily
20  award less than $2,500. Distributed pro-rata to a class of 10,000 people, these damages would be
21  $.25 per person.").
22       Under 15 U.S.C. § 1692k(a)(2), the recovery of statutory damages by successful plaintiffs
23  may not exceed $1,000 in an individual action and may not exceed the lesser of $500,000 or 1 per
24  centum of the net worth of the debt collector in a class action. In determining the amount of
25  liability, the Court considers the frequency and persistence of Defendants' noncompliance, the
26  nature of such noncompliance, the extent to which the noncompliance was intentional,
27  Defendants' resources, and the number of persons adversely affected. 15 U.S.C.A. § 1692k(b).
28  Courts may permit recovery under both California's Rosenthal Act and the Federal Debt

1 Collection Practices Act. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1068 (9th Cir.
2 2011) ("[P]ermitting recovery under the Rosenthal Act and the FDCPA is not inconsistent with
3 section 1692k of the FDCPA.").

4     A class recovery of $51,975.00 far exceeds 1% of Defendants' combined net worth, (*see*
5 Dkt. No. 53), which is the maximum recovery of statutory damages pursuant to 15 U.S.C. §
6 1692k(a)(2). Considering the risks and costs of continued litigation and availability of a complete
7 defense, this amount supports preliminary approval.

8 * * *

9     Accordingly, the fairness factors warrant preliminary approval of the settlement agreement.

### b. Class Notice Plan

The class members of any class certified under Rule 23(b)(3) must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id*. "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

Here, the parties agree the "best form of notice practicable" is to send the settlement notice via first class mail to the last known address of each class member as indicated by Defendants' business records and a search of the national change-of-address registry. (Dkt. No. 48-1 at 23.) As previously discussed, American Legal Claim Services will mail the class notice to each class member no later than 25 days after the preliminary approval date. (Dkt. No. 48-2 ¶ 3.4.) All envelopes in which American Legal Claim Services mails the class notice to class members will include a notation requesting address correction, and if any notice is returned with a new address,

1 American Legal Claim Services will resend the class notice to the new address. (*Id*.) American
2 Legal Claim Services is not responsible for the postal service's failure to timely deliver the class
3 notice to class members and will not have any obligation to resend a notice that is not returned by
4 the postal service before the final fairness hearing. (*Id*.) Defendants will bear the cost of
5 distributing the class notice and related expenses. (*Id*. ¶ 3.5.)

To resolve the Court's concerns, the parties submitted a revised class notice. (Dkt. No. 54-1.) The revised notice includes instructions for class members who wish to opt out or object to the settlement and a placeholder for a website link where class members can find key deadlines and case documents. (*Id*.) It also explains the date and time of the final approval hearing may change without further notice. (*Id*.) The revised notice advises the class they can object to the request for attorneys' fees and costs, as well as the service award, when the motion for fees will be filed, and how class members can access and object to the motion. (*Id*.) While the revised notice adequately addresses the Court's concerns, it shall be further amended to reflect the schedule as approved by the Court.

These procedures appear sufficient to ensure class members receive adequate notice of the settlement and an opportunity to object. Accordingly, the revised class notice and notice plan support preliminary approval.

### c. Attorneys' Fees and Costs

Under the settlement agreement, Defendants will pay all costs associated with class notice and administration. (Dkt. No. 48-2 ¶ 4.7.) The settlement agreement further provides:

> Defendants shall pay attorneys' fees and costs to Class Counsel pursuant to 15 U.S.C. § 1692k(a)(3) and California Civil Code § 1788.17, in an amount agreed by the parties or to be decided by the Court upon noticed motion if the parties cannot agree. The application for approval of such attorneys' fees and costs will be made separately, upon noticed motion, and determined at the Final Fairness Hearing, or at the Court's discretion.

(*Id*. ¶ 4.8.)

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable,

even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Courts typically apply the lodestar method to calculate reasonable attorneys' fees. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The Court may adjust the resulting figure based on several factors, including the benefit obtained for the class, quality of representation, complexity and novelty of the issues presented, and risk of nonpayment. *Id*. at 941-42. The fee-requesting party must submit billing records to establish the number of hours it requested are reasonable, *see Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), and produce satisfactory evidence "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

As of now the parties have not agreed to an amount of attorneys' fees, but Plaintiff's counsel intends to seek attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and California Civil Code § 1788.17. (Dkt. No. 48-2 ¶ 21.) Plaintiff will move for reasonable attorneys' fees and costs separately, upon noticed motion, and such fees will include all work remaining to be performed in documenting, securing approval of, and administering the settlement agreement. (*Id*. ¶ 22.) The estimated lodestar for Plaintiff's representation is anticipated to be approximately $123,500.00. (*Id*.) The Court currently has insufficient information to evaluate the reasonableness of the approximation. Accordingly, Plaintiff's motion for attorneys' fees shall include declarations and detailed billing records so the Court may determine an appropriate lodestar figure and class members and Defendant may object to the requested fees**.**

In connection with final approval, Plaintiff's counsel must submit an itemized summary of each category of costs with its motion for attorneys' fees so the Court may evaluate whether such costs are reasonable expenses incurred for the benefit of the class.

//

//

**CONCLUSION**

Accordingly, the Court GRANTS the parties' motion for preliminary approval of class action settlement and provisional class certification. Within seven days of mailing the notice to class members, the parties shall file a copy of the actual notice distributed to the class. The parties shall appear before this Court for a final approval hearing on March 14, 2024 at 9:00 a.m. via Zoom.

This Order disposes of Docket No. 48.

**IT IS SO ORDERED.**

Dated: November 16, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge