UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HARRIET GATCHALIAN,

Plaintiff,

v.

ATLANTIC RECOVERY SOLUTIONS, LLC, et al.,

Defendants.

Case No.  3:22-cv-04108-JSC

**ORDER RE: MOTION FOR FINAL APPROVAL; MOTION FOR ATTORNEY'S FEES AND COSTS**

Re: Dkt. Nos. 58, 59

Plaintiff Harriet Gatchalian brought this putative consumer class action against Defendants for abusive, deceptive, and unfair debt collection practices.  The Court previously granted Plaintiff's motion for preliminary approval of a class action settlement resolving her claims and those of the putative class.  (Dkt. No. 57.)  Plaintiff's motions for final approval of the class action settlement and for attorney's fees, costs, and a class representative award are now pending before the Court.  (Dkt. Nos. 58, 59.)  Having considered Plaintiff's motions and the relevant authority and having had the benefit of oral argument on May 9, 2024, the Court GRANTS the motion for final approval and GRANTS the motion for attorney's fees, costs, and a class representative incentive award.

## BACKGROUND

Plaintiff allegedly incurred and defaulted on a consumer debt transferred to DNF Associates, LLC, which then directed Atlantic Recovery Solutions, LLC to collect the debt from Plaintiff. (Dkt. No. 1-1 ¶¶ 18-21.) From June 2021 to October 2021, Atlantic Recovery Solutions left numerous voicemails on and sent various text messages to Plaintiff's cellular telephone, representing Atlantic Recovery Solutions needed to speak with Plaintiff or her legal representation immediately regarding documentation forwarded for legal review, "a legal required notice," "[her]

1  filed case," Atlantic Recovery Solutions' "need to make a negative recommendation on [her]

2  behalf," and "employment verification with [her] employer." (*Id*. ¶¶ 22-37.)

3        Plaintiff initially filed this action in the Santa Clara County Superior Court seeking

4  statutory damages against Defendants under the California Rosenthal Fair Debt Collection

5  Practices Act, California Civil Code §§ 1788-1788.33, and the federal Fair Debt Collection

6  Practices Act, 15 U.S.C. §§ 1692-1692p, for Defendants'

> routine practice of sending voicemail and cellular telephone text messages, like those sent to Plaintiff, which fails to disclose: 1) Defendants' identity, 2) the nature of Defendants' business, and 3) that each message was a communication from a debt collector in an attempt to collect a debt; and which attempt to instill a false sense of urgency in the consumer by falsely representing or implying that a civil lawsuit would be filed, or had been filed, to collect a defaulted consumer debt, when no such civil lawsuit was intended to be filed or had in fact been filed.

12  (Dkt. No. 1-1 ¶ 5.)  After Defendants removed the action to federal court, the Court denied

13  Plaintiff's motion to remand.  (Dkt. Nos. 1, 16.)  Plaintiff then moved to strike Defendants'

14  affirmative defenses as insufficiently pled, which the Court granted.  (Dkt. No. 27.)  The parties

15  subsequently attended a mediation session at which they reached an agreement to settle the case

16  on a class-wide basis. (Dkt. No. 44.)

17                                            **SETTLEMENT AGREEMENT**

18       **A.**      **The Settlement Class**

19        The Settlement Class is composed of all persons with addresses in California to whom

20  Atlantic Recovery sent voicemail messages and/or text messages in an attempt to collect defaulted

21  consumer debt on behalf of DNF Associates, which was originally owed to Sallie Mae Bank, from

22  June 6, 2021, through the date of class certification. (Dkt. No. 48-2 ¶ 2.3.) Excluded from the class

23  are any class members who timely mailed a request for exclusion; any officers, directors, or legal

24  representatives of Defendants; and any judge, justice, or judicial officer presiding over this matter

25  and the members of their immediate families and judicial staff. (*Id*. ¶ 2.4.)

26       **B.**      **Payment Terms**

27        The Settlement Agreement requires Defendants to establish a settlement fund of

28  $51,975.00, which will be distributed to settlement class members in pro rata shares, with each

*United States District Court*
*Northern District of California*

class member receiving at least $175.00. (*Id.* ¶ 4.1.) To the extent any settlement checks remain uncashed 90 days from the date of their mailing, the uncashed amount will be distributed to the Katharine and George Alexander Community Law Center in San Jose, California, as a *cy pres* recipient. (*Id.* ¶ 4.4; see Dkt. No. 48-5 ¶¶ 4-9.)

Defendants also agree to pay Plaintiff $2,000.00 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) and California Civil Code § 1788.17, (Dkt. No. 48-2 ¶ 4.2), and $2,000.00 as a service award, (*id.* ¶ 4.6), and will cease collecting from Plaintiff the debt originally owed to Sallie Mae Bank (*id.* ¶ 4.5).

Under the Settlement Agreement, Defendants must pay attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and California Civil Code § 1788.17 in an amount agreed on by the parties or as decided by the Court if the parties cannot agree. (*Id.* ¶ 4.8.)

### C.     Scope of Release

Each class member will "release and forever discharge Defendants and all of Defendants' respective principals, members, subsidiaries, partners, officers, directors, shareholders, managers, employees, agents, representatives, successors, assigns, attorneys, and vendors, and insurance carriers," (Dkt. No. 48-2 ¶ 7.1), from "all claims alleging violation of California Civil Code §§ 1788-1788.33 and/or 15 U.S.C. §§ 1692-1692p, or similar or related claims or causes of action under state or federal law, arising from or relating to voicemail messages, and/or cellular telephone text messages, sent by or on behalf of, Defendants in the form described in Plaintiff's Complaint herein, which were sent within the Class Settlement Period." (*Id.* ¶ 2.17.) Thus, under the settlement, class members waive all rights under California Civil Code § 1542 as to any alleged violation of California Civil Code §§ 1788-1788.33 and 15 U.S.C. §§ 1692-1692p, as well as similar or related claims arising from Defendants' conduct as described in Plaintiff's complaint. (*Id.* ¶ 7.1.) The settlement's release includes "unknown claims," meaning class members' released claims include those "Plaintiff or any class member does not know or even suspect to exist against any of the Released Parties, which, if known, might have affected his or her decision regarding the settlement of this matter," and further, claims "known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or have existed, or could have existed, through the

1  effective date of this Agreement, based upon actions or conduct occurring on or before the date of

2  this Agreement, without regard to subsequent discovery or existence of such different or additional

3  facts concerning each of the Released Parties." (*Id*. ¶ 7.1.)

4  **D.      Notice**

5  The parties designated American Legal Claim Services, LLC as the Settlement Class

6  Administrator. (Dkt. No. 48-1 at 12.)  On December 1, 2023, Defendants provided the Settlement

7  Class Administrator a list of class members and their addresses based on Defendants' records.

8  (Dkt. No. 58-2 at ¶ 3.)   After eliminating duplicates, the Settlement Class Administrator mailed

9  notice to 248 class members.  (*Id*. at ¶¶ 3-4.)  Fifty of these were returned by the United States

10  Postal Service and after further address searching, the Settlement Class Administrator remailed

11  notice to 44 individuals.  (*Id*. at ¶ 5.)  Six notices were deemed undeliverable.  (*Id*.)  Class

12  members were not required to submit a claim form or respond to the notice unless they wanted to

13  request exclusion from the settlement.

14  **E.      Requests for Exclusion and Objections**

15  No requests for exclusion or objections were received. (Dkt. No. 71 at 2.)

16  **DISCUSSION**

17  The approval of a settlement is a multi-step process. At the preliminary approval stage, the

18  court should grant such approval only if it is justified by the parties' showing that the court will

19  likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve

20  the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the

21  class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class

22  will be notified, and a final fairness hearing scheduled to determine if the settlement is fair,

23  adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-

24  00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

25  At the second stage, "after notice is given to putative class members, the Court entertains

26  any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of

27  the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v.

28  *Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)).  Following the final fairness

1  hearing, the Court must finally determine whether the parties should be allowed to settle the class

2  action pursuant to their agreed upon terms.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*.,

3  221 F.R.D. 523, 525 (C.D. Cal. 2004).

## II.  CLASS CERTIFICATION

5          Final approval of a class action settlement requires, as a threshold matter, an assessment of

6  whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).

7  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would

8  affect these requirements have changed since the Court preliminarily approved the class on

9  November 16, 2023, this Order incorporates by reference the Court's prior analysis under Rules

10  23(a) and (b) as set forth in the Order granting preliminary approval.  (Dkt. No. 57 at 5-10.)

## III.  ADEQUACY OF NOTICE

12          Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable

13  manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

14  Notice includes "[n]otice of the motion [for attorney's fees] must be served on all parties and, for

15  motions by class counsel, directed to class members in a reasonable manner."  Fed. R. Civ. P.

16  23(h)(1).  Notice of the motion for attorney's fees is required in both common fund and statutory

17  fee cases. *See* Fed. R. Civ. P. 23 advisory committee's note (2003) ("Because members of the

18  class have an interest in the arrangements for payment of class counsel whether that payment

19  comes from the class fund or is made directly by another party, notice is required in all

20  instances."); *see also* 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 8:22 (6th ed.

21  Nov. 2023 update) ("whether or not class members are paying counsel's fee directly, fee notice

22  plays an

23          Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

24  including individual notice to all members who can be identified through reasonable effort." The

25  notice must "clearly and concisely state in plain, easily understood language" the nature of the

26  action, the class definition, and the class members' right to exclude themselves from the class.

27  Fed. R. Civ. P. 23(c)(2)(B); *see also Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566,

28  575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in

United States District Court
Northern District of California

sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (cleaned up). Although Rule 23 requires reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting the standard for class notice is "best practicable" notice, not "actually received" notice).

On preliminary approval, the Court expressed concerns regarding the class notice. (Dkt. No. 51.)  In response to the Court's concerns, the parties submitted a revised notice which, among other things, (1) included a placeholder website link where class members could find key deadlines and case documents, (2) advised class members they could object to Plaintiff's motion for attorney's fees, and (3) advised class members when the motion for attorney's fees and the motion for final approval would be filed and how to access a copy of it. (Dkt. No. 54-1.) The Court found these notice procedures, among others, appeared sufficient to ensure adequate notice under Rule 23(e), (h). (Dkt. No. 57 at 17.)

In connection with his motion for final approval, Plaintiff attached a copy of the Notice distributed to class members which included a link the website: www.gatchaliansettlement.com, where, according to the Notice, class members could view "the Notice, preliminary approval order, motions for preliminary and final approval, and attorneys' fees." (Dkt. No. 58-2 at 6.) However, when the Court reviewed the website—after the objection deadline—it did not make available either the final approval motion or the motion for attorney's fees and costs. (Dkt. No. 62.)  Accordingly, the Court ordered class counsel to reissue notice to the settlement class and ensure the motion for attorney's fees and motion for final approval were available on the website. (Dkt. Nos, 66, 68.)  The Settlement Class Administrator has since distributed a second postcard notice advising class members they can view these case documents. (Dkt. No. 71.)

Out of the 248 notices mailed only 6 were returned as undeliverable with no further address available.  (Dkt. No. 58-2 at ¶ 6.)  No requests for exclusion or objections were received.

Given the above, the Court concludes the parties have sufficiently provided the best practicable notice to class members.

United States District Court
Northern District of California

## IV.    *CY PRES* AWARD

A *cy pres* award is "a tool for 'distributing unclaimed or non-distributable portions of a class action settlement fund to the next best class of beneficiaries.'" *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1111 (9th Cir. Dec. 27, 2021) (quoting *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). "Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin*, 663 F.3d at 1036.

The parties have selected the Katharine and George Alexander Community Law Center in San Jose as the *cy pres* recipient.   If any settlement checks remain uncashed after 90 days from mailing, the uncashed amount will be distributed to the Katharine and George Alexander Community Law Center.  (Dkt. No. 48-2 at ¶ 4.4.)  The Law Center is the clinical civil program for Santa Clara School of Law and a unit of Santa Clara University.  (Dkt. No. 48-5 a ¶ 4.)  The Law Center holds regular brief service advice clinics, including at the Santa Clara County Superior Court, and full representation to primarily low-income clients with consumer issues.  (*Id.* at ¶¶ 6-7.)  The most common issue for clinic clients at the superior court relates to collection activity by debt buyers.  (*Id.* at ¶ 6.)  Other courts have previously approved the Law Center as an appropriate *cy pres* recipient in settlements in other consumer-debt related class actions.  (Id. at ¶ 8.)  *See also Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2022 WL 562831, at *7 (N.D. Cal. Feb. 24, 2022); *Newton v. Am. Debt Servs., Inc*., No. 11-cv-3228-EMC, 2016 WL 7757521 (N.D. Cal. July 1, 2016).

The Law Center's mission to provide legal assistance to low-income individuals with consumer issues is sufficiently related to the issues in this case and the objectives of the FDCPA and the Rosenthal Act to protect consumers against abusive and deceptive practices by debt collectors. The Court thus concludes the Law Center is an appropriate *cy pres* recipient.

## V.    FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

To grant final approval, the Court must find the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e). In making this determination, courts generally must consider the following factors:

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Under the revised Rule 23(e), the Court must also consider whether the settlement resulted from collusion among the parties. *See Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (holding courts must apply the collusion factors set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011), to post-class action settlements as well as those settled before certification.) When the settlement is reached pre-certification, however, the court must apply "an even higher level of scrutiny" and "substantively grapple with whether the *Bluetooth* warning signs created an unfair settlement." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 608 (9th Cir. 2021) (cleaned up).

## A.    The Fairness Factors

### 1.    The Strength of Plaintiff's Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court first considers "the strength of [Plaintiff's] case on the merits balanced against the amount offered in the settlement." *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). Although this action settled before the Court ruled on the merits of Plaintiff's claims, the Court need not reach an ultimate conclusion about the merits of the dispute now, "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally

8

arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id*.

Here, although Plaintiff believes she has a strong case, she recognizes the expense, risk, and length of continued proceedings necessary to prosecute the action through trial and potential appeal. Plaintiff notes Defendants contest the merits of her claims as well as the appropriateness of class certification. Defendants have also raised numerous affirmative defenses including "bona fide error" which could constitute a complete defense to Plaintiff's claims. Given the risks posed by continuing to litigate Plaintiff's claims, the certainty of Class Member recovery under the settlement weighs in favor of granting final approval.

### 2. Settlement Amount

When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc*., 221 F.R.D. at 527. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (collecting cases).

The Court previously concluded the amount of the settlement, $51,975, was within the range of possible approval. (Dkt. No. 57 at 15-16.) The settlement agreement provides each class member will receive a payment of no less than $175.00. (Dkt. No. 48-2 ¶ 4.1.) While this amount is significantly less than the $1,000 cap on statutory damages for individual actions under 15 U.S.C. § 1692k(a)(2), in a class action statutory damages may not exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. Defendants have provided evidence establishing a class recovery of $51,975.00 far exceeds 1% of Defendants' combined net worth, and therefore represents the maximum recovery of statutory damages pursuant to 15 U.S.C. § 1692k(a)(2). (Dkt. No. 53.)

This factor thus weighs in favor of final approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the

United States District Court
Northern District of California

bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Rather, a court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014).  The Court's preliminary approval order discussed the litigation history and the discovery obtained prior to settlement. (Dkt. No. 57 at 12.)  The settlement was reached here with the assistance of an experienced mediator.

The Court thus concludes this factor likewise weighs in favor of final approval.

### 4.    Experience and Views of Counsel

The experience and views of counsel also weigh in favor of approving the settlement. Class counsel has extensive experience in FDCPA litigation and strongly support approval of the settlement given the risks and challenges involved.  (Dkt. No. 48-2 at ¶¶ 11, 24-26; Dkt. No. 48-3 at ¶¶ 5, 9-11; Dkt. No. 48-4 at ¶¶ 5, 7-9.)

### 5.    Presence of a Government Participant

No government entity is a party to this action.

### 6.    Reaction of Class Members

As previously discussed, the Settlement Class Administrator mailed notice to 248 individuals, of which 50 notices were returned, and 44 resent to new addresses.  (Dkt. No. 58-2 at ¶¶ 4-6.)  None of the resent notices were returned.  (*Id*. at ¶ 6.)  Thus, the Settlement Class Administrator estimates a notice rate of 97.58%.  (*Id*. at ¶ 7.)  No objections or request for exclusion have been received.  (*Id*. at ¶¶ 7-8.)  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc*., 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.,* 361 F.3d at 577 (holding approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

***

In sum, the fairness factors weigh in favor of granting Plaintiff's motion for final approval of the class action settlement.

### B.    The *Bluetooth* Factors

Finally, the Court must determine whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion. *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011). In determining whether the settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Id*. The Ninth Circuit has identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id*. at 947 (internal quotation marks and citations omitted).

For the first *Bluetooth* factor, the Court compares the payout to the class to class counsel's claim for fees. *See Harris v. Vector Mktg. Corp*., No C-08-5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011) (examining "whether a disproportionate part of the settlement is being awarded to class counsel" under the settlement agreement).  Under the settlement agreement, Defendants have agreed to pay $51,975 which will be divided among class members in pro rata shares after deducting $2,000 for Plaintiff's individual statutory damages and $2,000 as a service award for Plaintiff.  (Dkt. No. 48-2 at §§ 4.1-4.6.)  Defendants also agree to pay Class Counsel's attorney's fees and costs pursuant to "15 U.S.C. § 1692k(a)(3) and California Civil Code § 1788.17, in an amount agreed by the parties or to be decided by the Court upon noticed motion if the parties cannot agree."  (*Id*. at ¶ 4.8.)  The parties did not agree on the amount of fees and Class Counsel seeks $123,500 in attorney's fees and costs.  While this amount is over twice the size of the common fund, the Court finds this is not a sign of collusion given Plaintiff negotiated the statutory maximum amount of statutory damages in light of Defendants' net worth.  *See* 15 U.S.C. § 1692k(a)(2).

United States District Court
Northern District of California

The second warning sign—a "clear sailing" provision—is not present here. *See Bluetooth*, 654 F.3d at 940, n.6 ("a 'clear sailing agreement,' wherein the defendant agrees not to oppose a petition for a fee award up to a specified maximum value."). Defendants did not agree they would not oppose Plaintiff's request for fees and have in fact opposed Plaintiff's motion for attorney's fees and costs.

The third warning sign—whether the parties have arranged for fees not awarded to the class to revert to the defendant rather than be added to the settlement fund, *see Bluetooth*, 654 F.3d at 948—is also not present here. The Settlement Agreement is non-reversionary—all of the funds will be distributed to the class members or the *cy pres*. (Dkt. No. 48-2 at ¶ 4.4.)

The Court thus concludes the Settlement Agreement did not result from, nor was it influenced by, collusion. Instead, the Settlement Agreement adequately satisfies the settlement class members' claims.

* * *

In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not indicate collusion. The Court is therefore satisfied the Settlement Agreement was not the result of collusion between the parties and instead is the product of arms-length negotiations between experienced and professional counsel. For each of these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is appropriate.

## VI.   MOTION FOR ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

### A.   Attorney's Fees

Rule 23 permits a court to award "reasonable attorneys' fees ... that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "In order to encourage private enforcement of the law ... Congress has legislated that in certain cases prevailing parties may recover their attorneys' fees from the opposing side. When a statute provides for such fees, it is termed a 'fee shifting' statute." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (cleaned up). "The FDCPA is one such statute, providing that any debt collector who fails to comply with its provisions is liable 'in the case of any successful action ... [for] the costs of the action, together

1    with a reasonable attorney's fee as determined by the court.'" *Id.* (quoting 15 U.S.C. §

2    1692k(a)(3)).  An award of fees under the FDCPA is mandatory.  *Camacho*, 523 F.3d at 978.

3           For fee shifting cases, the lodestar method is the appropriate method for calculating an

4    award of fees.  *Id.* The lodestar method "requires multiplying a reasonable hourly rate by the

5    number of hours reasonably expended on the case." *Shirrod v. Dir., Office of Workers' Comp.*

6    *Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015).  "Although in most cases, the lodestar figure is

7    presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the

8    lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit*

9    *Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).

10                    **1.      Reasonable Hourly Rate**

11          First, the court "must determine a reasonable hourly rate to use for attorneys and paralegals

12   in computing the lodestar amount." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir.

13   2013). "Generally, when determining a reasonable hourly rate, the relevant community is the

14   forum in which the district court sits." *Camacho*, 523 F.3d at 979. The court must rely on the

15   prevailing rate in the community "for similar work performed by attorneys of comparable skill,

16   experience, and reputation." *Id.* (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)).

17   The fee applicants must testify "the requested rates are in line with those prevailing in the

18   community for similar services by lawyers of reasonably comparable skill, experience and

19   reputation." *Camacho*, 523 F.3d at 979 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

20   Their "affidavits ... and rate determinations in other cases are satisfactory evidence of the

21   prevailing market rate." *Camacho*, 523 F.3d at 979 (quoting *United Steelworkers of Am. v. Phelps*

22   *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

23          Plaintiff seeks hourly rates of $750/hour for Fred Schwinn, an attorney with 26 years of

24   experience; $650/hour for Raeon Roulston, an attorney with 16 years of experience; and

25   $550/hour for Matthew Salmonsen, an attorney with 14 years of experience.  (Dkt. No. 59-1 at 7.)

26   Plaintiff insists these requested hourly rates are "fully supported by prior fee awards received, by

27   the rates they customarily charge their fee-paying clients, by their extensive skill and experience in

28   this and similar cases, and by rates that have been awarded in recent cases in this and other

United States District Court
Northern District of California

Northern California courts." (Dkt. No. 59-1 at 9.) Plaintiff relies heavily on the "*Lafferty* matrix," which is "an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C." *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) (discussing *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371-75 (D. D.C. 1983)). The Ninth Circuit has explained "just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Id.* Accordingly, this Court declines to use the matrix to evaluate the reasonableness of the hourly rates sought here.

While not cited in their motion, Plaintiff's counsel has submitted declarations attesting their requested hourly rates have recently been approved in multiple state court proceedings in the Santa Clara County Superior Court. (Dkt. No. 59-2, Schwinn Decl. at ¶ 12; Dkt. No. 59-3, Roulston Decl. at ¶ 13; Dkt. No. 59-4, Salmonsen Decl. at ¶ 10.) Further, another judge in this district approved similar, albeit slightly lower, hourly rates in an FDCPA action in 2022. *See Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2022 WL 562831, at *11 (N.D. Cal. Feb. 24, 2022) (awarding $600 for an attorney with over 29 years' experience; $475 for an attorney with 16 years' experience, and $400 for an attorney with 9 years' experience).

Defendants' insistence that counsel is at most entitled to a blended rate of $450/hour each is unpersuasive. (Dkt. No. 60 at 5.) That the court in *Bidwal v. Unifund CCR Partners*, No. 17-cv-02699-LB, 2019 WL 4039955 (N.D. Cal. Aug. 27, 2019), awarded this rate over four and a half years ago does not indicate it is a reasonable hourly rate today.[1] *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) ("[t]he district court's function is to award fees that reflect economic conditions in the district; it is not to 'hold the line' at a particular rate, or to resist a rate because it would be a 'big step.'"). "A normal adjustment of rates to reflect their present value is warranted." *Norton*, 2022 WL 562831, at *11 (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) ("District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by ... using the attorneys' historical rates and adding a

---

[1] Defendants' reliance on *Brady v. Patenaude & Felix*, No. 18-CV-07305-NC, 2019 WL 5535772, at *2 (N.D. Cal. Oct. 25, 2019), is unpersuasive for the same reason.

United States District Court
Northern District of California

prime rate enhancement.")).

Nor is the Court persuaded by Defendants' suggestion that because this is a "straightforward debt-collection case" counsel is somehow entitled to a lower hourly rate. "[I]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Camacho*, 523 F.3d at 981 (noting on remand the district court should not limit its analysis to rates awarded in FDCPA cases) (citation omitted).

Accordingly, the Court concludes the requested hourly rates of $750 per hour for Mr. Schwinn, $650 per hour for Mr. Roulston, and $550 per hour for Mr. Salmonsen, are reasonable.

### 2. Reasonable Hours

Next, the court "must determine a reasonable number of hours for which the prevailing party should be compensated." *Gonzalez*, 729 F.3d at 1202. "The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The party seeking the fee award bears the "the burden of submitting billing records to establish that the number of hours it has requested are reasonable." *Gonzalez*, 729 F.3d at 1202.

Counsel attests they billed 187.20 hours divided between 104.3 hours for Mr. Schwinn, 60.1 hours for Mr. Roulston, and 22.8 hours for Mr. Salmonsen. (Dkt. No. 59-2 at ¶ 17; Dkt. No. 59-3 at ¶ 15; Dkt. No. 59-4 at ¶ 12.) Counsel's request is supported by detailed billing records. (Dkt. No. 59-2 at 11-29.) Counsel also expects to work another 2-4 hours before final approval, and given the reissued notice, the Court expects counsel worked more than the 2-4 hours estimated; however, because counsel agreed to cap their fees at $123,500, they will not be compensated for any the fees on fees work.

Defendants contend counsels' requested hours should be discounted by 10 percent because (1) they reflect excessive billing for certain tasks; and (2) counsel cannot recover for paralegal tasks billed at an attorney rate. (Dkt. No. 60 at 8-9.) Defendants submit charts reflecting the tasks they have identified as excessive and those they contend reflect paralegal work. (Dkt. No. 60-7;

Dkt. No. 60-8.)  As to the later, Defendants' insistence that preparation of discovery documents including initial disclosures and written discovery requests should have been done by a paralegal and not counsel, is unpersuasive.  As to the excessive billing, the Court has reviewed the 18 entries Defendants' highlight.  Among other entries, Defendants emphasize the 12.9 hours spent preparing a discovery meet and confer letter.  (Dkt. No. 60-7.)   On reply, Plaintiff contends the "output was three distinct letters which were each 10 pages, single spaced.  Moreover, such meeting and conferring resulted from Defendants' near total abdication of their obligations to respond in good faith to Plaintiff's discovery requests."  (Dkt. No. 61 at 9.)

Having reviewed Plaintiff's complete billing records, the Court declines to reduce the number of hours as Defendants urge.  *Moreno*, 534 F.3d at 1113 ("duplication—based on the vicissitudes of the litigation process—cannot be a legitimate basis for a fee reduction. It is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours.") (emphasis in original).

### 3.   Lodestar Calculation

Based on the billing hours and rates provided above, Plaintiff calculates the lodestar amount as $129,830.  (Dkt. No. 59-1 at 7.)  "[T]he lodestar figure is presumptively a reasonable fee award." *Camacho*., 523 F.3d at 978.  The Court finds no basis for reducing Plaintiff's lodestar by nearly $50,000 as Defendants urge.  *See Van Gerwen v. Guarantee Mut. Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000) (stating adjustment of the lodestar is appropriate only in only in rare and exceptional cases) (cleaned up).  Plaintiff has already discounted the fees requested by nearly five percent by agreeing to cap the fee request at $123,500.  (Dkt. No. 59-1 at 2.)

In sum, the Court concludes Plaintiff's request for $123,500 in attorney's fees is reasonable.

### B.   Costs

The FDCPA authorizes an award of costs. 15 U.S.C. § 1692k(a)(3).  Plaintiff seeks $2,215.61 in litigation costs.  (Dkt. No. 59-2 at ¶ 18; Dkt. No. 59-2 at 28-29.)  Defendants object to Plaintiff's request for the following expenses: "include transcriptions of voicemails, PACER fees, service costs of discovery subpoenas, parking costs, a meal, and mediator fees" and request

United States District Court
Northern District of California

the Court reduce the cost request by $480.48.  (Dkt. No. 60 at 10.)  Defendants contend these costs do not fall under 28 U.S.C. § 1920.  However, "out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable as attorney's fees" in fee shifting cases such as this.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986); *see also Garcia v. Resurgent Cap. Servs., L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *12 (N.D. Cal. Aug. 30, 2012) ("in FDCPA cases, expenses that are generally charged to paying clients may be awarded, even though they are not normally taxable as costs.") (cleaned up).

The Court concludes the costs sought here are reasonable and appropriate, because they appear to have been necessary to prosecute this action and are of the type customarily billed to a fee-paying client. *See Salazar v. McDonald's Corp.*, No. 3:14-cv-02096-RS, 2017 WL 6883994, at *2 (N.D. Cal. Sept. 15, 2017) (awarding requested costs and expenses to counsel because they were "necessary to the prosecution of this litigation, were the sort of expenses normally billed to paying clients, and were incurred for the benefit of the class"); *Rutti v. Lojack Corp.*, No. CV 06-350 DOC JCX, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable.").

## C. Class Representative Award

Service or "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). However, the decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Although incentive awards are viewed more favorably than incentive agreements, excessive awards "may put the class

representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id.* at 960 (internal quotation marks and citation omitted). Thus, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

In evaluating an incentive award, the district court considers "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (cleaned up).

Plaintiff seeks an incentive award of $2,000.  Plaintiff contends this amount is appropriate given her time and effort in bringing this action.  Plaintiff attests she worked closely with counsel to provide documents, was available throughout the litigation to answer questions and review documents, and attended the mediation session.  (Dkt. No. 59-5 at ¶¶ 8-11.)  In light of the work performed by Plaintiff on behalf of the class, an incentive award of $2,000 is reasonable here. This is in addition to Plaintiff's individual statutory damages award of $2,000.  *See* 15 U.S.C. § 1692k(a)(2)(A); Cal. Civ. Code § 1788.17.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for final approval of the parties' class action settlement. In addition, the Court GRANTS Plaintiff's motion for attorneys' fees and costs; specifically, the Court awards the following: $123,500 in attorneys' fees; $2,215.61 in litigation costs; and $2,000 as an incentive award for Plaintiff.

In accordance with the Northern District's Procedural Guidance for Class Action Settlements, "[w]ithin 21 days after the distribution of the settlement funds and payment of attorneys' fees," Class Counsel shall file "a Post-Distribution Accounting" that provides the following, to the extent applicable:

The total settlement fund, the total number of class members, the total

United States District Court
Northern District of California

number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. Class

Counsel shall "summarize this information in an easy-to-read chart that allows for quick

comparisons with other cases," and "post the Post-Distribution Accounting, including the easy-to-

read chart, on the settlement website." *See id*.

This Order disposes of Docket Nos. 58, 59.

**IT IS SO ORDERED.**

Dated: May 9, 2024

JACQUELINE SCOTT CORLEY
United States District Judge